IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LISANDRO PATRICK,<br><br>Petitioner,<br><br>v.<br><br>NOELIA RIVERA-LOPEZ,<br><br>Respondent. | CIVIL NO. 12-1501 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Petitioner Lisandro Patrick (hereafter "petitioner Patrick") is a national of the Dominican Republic and a Dutch citizen, who was permanently residing in the United Kingdom (England) when he filed the petition under Hague Convention for the return of minor child L.N.R. on June of 2012. Petitioner claims respondent Noelia Rivera-López (hereafter "respondent Rivera-López"), the mother of the infant, wrongfully removed L.N.R. on March of 2012 from England to Puerto Rico without petitioner's consent. (Docket No. 1).

Petitioner Patrick and respondent Rivera-López were married on June 8, 2010, in the town of Lajas, Puerto Rico, after L.N.R. had been born. Petitioner Patrick submits that, upon their marriage, he moved to England to set up a family home where respondent and her minor children joined him by January 11, 2011. (*Id.*). As such, petitioner Patrick alleges the parties are all permanent residents of the United Kingdom where petitioner has been employed as a sales assistant, while he was attempting to convert his teaching qualifications

so that he could begin working as a primary school teacher in the United Kingdom. Petitioner Patrick submits that, since January of 2011, all the parties above mentioned have been living in the United Kingdom as a family until March 6, 2012 when respondent Rivera-López wrongfully removed the child L.N.R., and together with her older child, moved back to Puerto Rico. After several attempts to contact respondent, by March 11, 2012, she notified petitioner they would not be returning to the United Kingdom.

On June 22, 2012, petitioner Patrick filed this action under the Hague Convention on the Civil Aspects of International Child Abduction, an international treaty among the United States and fifty other countries, including England as signatories. See *Hague Convention on the Civil Aspects of International Child Abduction, opened for signature* October 25, 1980, T.I.A.S. 11,670, *reprinted in* 51 Fed.Reg. 10,494 (March 26, 1986). (Complaint, Docket No. 1).

In sum, petitioner avers respondent wrongfully removed the child L.N.R. from their habitual place of residence England in breach of petitioner's rights of custody. Since petitioner claims he should be considered the father of the child under the laws of England, this petition was filed to request the return of the child for petitioner never consented to L.N.R.'s removal.

After the Court appointed *pro bono* counsel for respondent and initially scheduled the evidentiary hearing, the parties consented to jurisdiction by a Magistrate Judge. (Docket Nos. 25, 26 and 27). On September 3, 2012, respondent Rivera-López answered

the Complaint. (Docket No. 30). On October 11, 2012, a settlement conference was held in which the non-jury trial was set.[1]

On the same day, respondent Rivera-López filed a First Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The most relevant ground for dismissal of the petition stems from petitioner Patrick's non-compliance with the Hague Convention's requirements to institute the petition for the return of the child for he was not exercising the rights of custody or its equivalent in that he had not been granted parental responsibility as to minor L.N.R. (Docket No. 50).

Petitioner Patrick requested an extension of time to file a reply to the motion to dismiss. On November 5, 2012, said opposition was filed. (Docket No. 55).

Whether or not respondent and the child are to be considered habitual residents of England prior to the alleged removal may rest on factual considerations for the parties have contested the issue.[2] Still, a petition needs to first comply with the requirements set up in the Hague Convention prior to federal court having jurisdiction on the claim. As explained herein below, we agree with respondent that petitioner has failed to comply with the requirements of wrongful removal under the Hague Convention inasmuch as respondent

---

[1] The parties agreed at the conference that the non-jury trial be held, per petitioner's request, by November 30, 2012. (Docket No. 51).

[2] Petitioner avers in his petition the habitual place of residence of L.N.R. was England (Docket No. 1) and respondent avers in her answer to the petition that it is Puerto Rico. (Docket No. 30). This Court considers it is not necessary to hold a hearing to delve into whether Puerto Rico is considered to be the habitual place of residence of the minor immediately prior to her removal. We assume, for purposes of this opinion, that the habitual place of residence of the minor was England taking as true the factual statements of the complaint under the applicable motion to dismiss standard. However, even assuming for the sake of the argument, that the habitual place of residence of the minor prior to her removal was Puerto Rico, petitioner's contentions would not prosper under Puerto Rico Law, as explained below.

was not exercising the rights of custody or its equivalent in that he had not been granted parental responsibility as to minor L.N.R.

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissal may be warranted for failure to state a claim upon which relief can be granted.[3]

To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. Abbott v. United States, 144 F.3d 1, 2 (1st Cir. 1998).

Under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the factual statements of the complaint are considered true, indulging every reasonable inference helpful to plaintiff's cause. However, the tenet that a court must accept as true all the allegations contained in

---

[3] Said rule provides:
... (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
....
... (6) failure to state a claim upon which relief can be granted ...

a complaint is inapplicable to legal conclusions and mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

## LEGAL DISCUSSION

The Hague Convention applies where a child has been removed or retained away from his/her habitual residence in breach of the custody rights that the Petitioner (parent) was exercising at the time of the wrongful removal or wrongful retention. Hague Convention, Art. 3. The objects of the Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. 1.

The Hague Convention defines in Article 3 the following: (a) the removal must be in breach of the rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.[4]

Succinctly, the issue of custody and/or parental responsibility at the time of removal is essential in determining whether there was a wrongful removal under the Hague Convention. Hague Convention, Art. 1, *et seq*.

---

[4] The rights of custody mentioned may arise in particular by operation of law or by reason of a judicial or administrative decision or by reason of an agreement having legal effect under the law of that State.

Petitioner Patrick has to establish the following elements of wrongful removal or retention by demonstrating by a preponderance of the evidence that:

(1) the habitual residence of the child immediately before the date of the allegedly wrongful removal or retention was in the country to which return is sought;

(2) the removal or retention breached the Petitioner's custody rights under the law of the child's habitual residence;

(3) the Petitioner was actually exercising or would have been exercising custody rights of the child at the time of his or her removal or retention; and

(4) the child has not attained the age of 16 years.

*See* Nicolson v. Pappalardo, 605 F.3d 100, 103 (1st Cir. 2010); Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998); Pesin v. Osorio-Rodríguez, 77 F.Supp.2d 1277, 1284 (S.D.Fla.1999); Méndez-Lynch v. Méndez-Lynch, 220 F.Supp.2d 1347, 1357 (M.D. Florida 2002); González-Locicero v. Nazor Lurashi, 2004 WL 1202729 (D.P.R. 2004) (unpublished opinion).

Petitioner Patrick needs to establish these basic requirements for his petition under the Hague Convention prior to respondent having to present any of the allowed defenses to petitioner's request for the return of the child L.N.R. to England. Petitioner Patrick presented with the petition, and respondent included in the motion to dismiss although questions its admissibility, an affidavit wherein petitioner acknowledged, prior to L.N.R.'s birth, that the child, male or female, who was to be born from respondent was his. At said time, petitioner indicated he was domiciled in Puerto Rico.

It is uncontested, as factual background admitted in respondent's motion to dismiss, that petitioner Patrick never registered the minor object of the petition L.N.R. as his daughter after her birth, during their marriage nor prior to the filing of the petition. Respondent, nevertheless, acknowledges petitioner and respondent are the natural parents of said minor L.N.R. and during her stay in England with her two children, they were residing with petitioner Patrick in the same place. However, petitioner Patrick must still establish having rights of custody over L.N.R. that will allow the filing of the petition for return of the child under the Hague Convention to be proper.

As grounds to deny petitioner's right of custody, respondent submits there was no parental responsibility agreement between the parties nor was there any action commenced whereby petitioner Patrick requested parental responsibility, guardianship or residence order as to the child. The established and uncontested fact is that respondent Rivera-López is the mother of minor L.N.R., who was born in the year 2009 in the city of Mayaguez, Puerto Rico, and who is registered with the Puerto Rico Demographic Registry solely as the child of respondent Rivera-López.[5]

The key operative concept of the Hague Convention on the Civil Aspects of International Child Abduction, which is implemented by International Child Abduction Remedies Act (hereafter "ICARA"), is that of "wrongful" removal of child from one country to another. Under the Convention's terms, a child's removal is wrongful only if one of parent's custody rights are breached. Remedy of return is not available, under Hague

---

[5] Respondent and the children are citizens of the United States and were all born in Puerto Rico. Respondent has an older child from a previous relationship who was born in the year 2005 and is not subject of this petition.

Lisandro Patrick v. Noelia Rivera-López
Civil No. 12-1501 (CVR)
Opinion and Order
Page No. 8

---

Convention and under ICARA, to a parent who possesses only access rights *vis a vis* custodial rights.

A Hague Convention proceeding is a civil action brought in the country to which the child was wrongfully removed. Wrongful removal means that a parent has taken a child out of a country in violation of the other parent's custody rights. ICARA actions may be brought in state or federal court. The conclusion that a child has been wrongfully removed under the Convention obligates a court to order him/her returned to the country from which he/she was taken. A parent who opposes the return of a child may, however, raise four affirmative defenses. Hague Convention, Art. 12, 13, 30; 42 U.S.C. § 11603(e)(2).[6] Unless these defenses are raised successfully, and if a petitioner has indeed established the necessary requirements to substantiate the petition, the court must order a wrongfully-removed child

---

[6] Once the Petitioner meets the burden of proving wrongful removal or retention, the child must be returned unless the Respondent can establish by preponderance of the evidence one or more of four defenses:
  (1)   the person having care of the child was not actually exercising the custody rights at the time of removal or retention, Hague Convention, Article 13a; or
  (2)   the person having care of the child had consented to or subsequently acquiesced in the removal or retention of the child, Hague Convention, Article 13a; or
  (3)   "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, Article 13, unnumbered paragraph; or
  (4)   the proceedings were commenced more than one year after the date of the wrongful removal or retention and "the child is now settled in its new environment." Hague Convention, Article 12.
Additionally, a court is not bound to order the return of a child if Respondent demonstrates by clear and convincing evidence that:
  (5)   there is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Article 13b; or
  (6)   return of the child would not be permitted by fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. Hague Convention, Article 20.
Even if an exception is established, the Court has discretion to order the return of a child if return would further the aims of the Hague Convention. Miller v. Miller, 240 F.3d 392, 402 (4th Cir.2001); England v. England, 234 F.3d 268, 270-71 (5th Cir. 2000). Furthermore, each exception is to be applied narrowly. Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995); 42 U.S.C. Section 1160(a)(4).

returned. A judicial proceeding under the Convention is not meant, however, to inquire into the merits of any custody dispute or any paternity adjudication underlying the petition for return. Hague Convention, Art. 19.

Article 12 provides, in relevant part, that: where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

We do not need to hold a hearing to determine the child's habitual place of residence because, taking the averments of the petition as true under the motion to dismiss standard, we consider England was the habitual place of residence of the child immediately prior to her alleged removal.[7] Thus, we use the laws of England to construe rights of custody of petitioner Patrick over minor L.N.R. This Court finds that under the laws of England petitioner did not establish the necessary requirement under the Hague Convention insofar as having established rights of custody/parental responsibility over minor L.N.R.[8] Although the laws of England since the key changes of the Children Act of 1989 were implemented,

---

[7] The First Circuit in Nicolson v. Pappalardo, 605 F.3d 100, 104 (1st Cir. 2010) noted that a majority of the circuits approach the question of habitual residence beginning "with the parents' shared intent or settled purpose regarding the child's residence." However, the Circuit courts are divided on the extent that parental intent should factor into the acquisition of a habitual residence. The First, Second, Fourth and Seventh Circuits place the primary focus upon parental intent, following the Ninth Circuit's decision in Mozes v. Mozes, 239 F.3d at 1067. The focus is on the parents' last shared intent in determining habitual residence. Koch v. Kotch, 450 F.3d 703, 715 (7th Ci. 2006) (same); Gitter v. Gitter, 396 F.3d 124, 131–133 (2nd Cir. 2005) (finding the Mozes opinion "particularly instructive" in determining habitual residence by considering the intentions of the parents as of the last time their intentions were shared).

[8] The United Kingdom is comprised of three separate legal jurisdictions, to wit, England and Wales, Scotland and Northern Ireland. For purposes of this petition, the law of England refers herein to England and Wales.

abandoned the notions of rights of custody, there are equivalent residence orders and contact orders proceedings to determine any dispute between parents regarding their minor children and these orders encompass the parental responsibility predicate.[9]

When a father and a mother are married to each other at the time of the birth of the child, their joint parental responsibility is established at the time of the child's birth. Such is not a factual predicate as to petitioner Patrick for at the time of birth of L.N.R. in the year 2009 they were residents of Puerto Rico and they were not married. Even had the parents been in England at such time, they were still not married until the year 2010.[10] Under this provision of England's law, parental responsibility ("rights of custody") of petitioner Patrick as to L.N.R. was not established for when the parents are not married to each other at the time of a child's birth, the mother, but not the father, has parental responsibility.[11] Still, parental responsibility may be acquired subsequent to a child's birth and we should examine the factual and legal contention as applicable to this case.

---

[9] Hague Convention, Art. 5, defines a right of custody as "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." In contrast, a right of access is defined as "the right to take a child for a limited period of time to a place other than the child's habitual residence."

[10] English law provides:
>  [w]here a child's father and mother were not married to each other at the time of his birth-
>  (a) the mother shall have parental responsibility for the child;
>
>  (b) the father shall not have parental responsibility for the child, unless he acquires it in accordance with the provisions of this Act. Children Act 1989 (c.41) Part I, § 2(2).

[11] Although the Children Act does not employ the word "custody" as a legal term of art, it provides in relevant part that: "[w]here a child's father and mother were married to each other at the time of his birth, they shall each have *parental responsibility* for the child," which is defined as "all the rights, duties, powers, responsibilities and authority which by law a parent of a child has in relation to the child and his property." Children Act §§ 2(1), 3(1) (emphasis added); see Haimdas v. Haimdas, 720 F.Supp.2d 183 (E.D.N.Y.,2010).

The most likely way to acquire parental responsibility between unmarried parents after a child's birth is being named as a father in the child's birth certificate. *See* Amendment to the Children Act of 1989 as reflected in the Adoption and Children Act of 2002, effective in December of 2003. It is herein undisputed that petitioner Patrick does not appear as the father of minor L.N.R. in her birth certificate. Minor L.N.R. was registered solely in the birth certificate issued in 2009 in Mayaguez, Puerto Rico, by the mother, respondent Rivera- López.[12]

Another way to acquire parental responsibility by a father is to make a formal parental responsibility agreement with the mother, which has to be made in the form prescribed under the laws of England and be signed before a court officer. Children Act of 1989 ¶4(1)(b). No such formal agreement or court officer documented form has been presented in regard to the parental responsibility of petitioner Patrick.

The law of England also allows two other means for unmarried fathers to acquire parental responsibility, that is, by having a parental responsibility order made in his favor under Section 4(1)(c) of the Children Act of 1989 or by having a residence order made

---

[12] *See* Vital Statistics Registry Act of Puerto Rico, 24 L.P.R.A. § 1041 *et seq.*, which creates a General Registry of Vital Statistics, Division of Demographic Registry and Vital Statistics at the Department of Health, in charge of all matters connected with the registration of births, marriages and deaths which may occur or take place in Puerto Rico." Art. 3 of the Act, 24 L.P.R.A. § 1071.

wherein a separate Section 4 parental responsibility order must be made. Children Act of 1989, ¶12(1).[13] None of the aforementioned means were used by petitioner Patrick in this case to acquire parental responsibility of L.N.R.

Our inquiry does not end here. We are now to examine whether the subsequent marriage of petitioner Patrick and respondent Rivera-López is sufficient to establish the necessary parental responsibility determination as to minor L.N.R. Such possibility may be contemplated since, even a stepfather who has married a woman with children may be able to obtain parental responsibility determination under the Adoption and Children Act of 2002 which prospectively is considered to have amended the Children Act of 1989.

When parents are unmarried or those who were married after the birth of a child, a father may acquire parental responsibility by being registered as the child's father under the Children Act of 1989, as provided by subsections (1A); or if the father and the child's mother make an agreement providing for parental responsibility of the child or if the court on his application orders that the father shall have parental responsibility. Where the birth was registered after December of 2003, parents will have joint parental responsibility if the details of both parents and their signatures are shown in the child's birth certificate. None of these situations are present in the instant case.

Notwithstanding above discussion under the laws of England as to the rights of custody of parents, even if we were to receive a declaration from the court of the state of the

---

[13] *See* N.V. Lowe, *The Allocation of Parental Rights and Responsibilities–The Position in England and Wales*, 39 Fam. L. Q. 267 (Summer 2005).

Lisandro Patrick v. Noelia Rivera-López
Civil No. 12-1501 (CVR)
Opinion and Order
Page No. 13

---

child's habitual residence, those rights are assessed under the Hague Convention definition of rights of custody above mentioned. As above discussed, under the present case factual and legal contentions, petitioner Patrick has failed to establish a *prima facie* case of wrongful removal under the Hague Convention inasmuch as he has not established that his custody rights were breached and that he was exercising the custody rights at the time of removal.[14]

However, petitioner's reply to the motion to dismiss juxtaposes that, as present residents of England, the laws of Puerto Rico would have concluded that upon the parties' subsequent marriage after the birth of L.N.R. on June 8, 2010, when they were domiciled in Puerto Rico, the illegitimate child would have been legitimated by virtue of such a marriage. Thus, the child is to be considered also legitimate under English law[15] for which reason petitioner as the legitimate father would have rights of custody as to such a legitimated child. (Docket No. 55, p. 8).

The laws of Puerto Rico do not validate petitioner's averment as to a legitimated child, as much as a subsequent marriage would not automatically grant a child or children

---

[14] Petitioner has not presented nor discussed either as to having any inchoate rights of although not having formally recognized rights of custody and/or parental responsibility, he was the primary care giver for petitioner was not employed at the time and respondent was the one exercising daily care of the children, with some government assistance. (Docket No. 1, ¶¶16, 17; ).

[15] Petitioner refers to law of England at Legitimate Act of 1976, Part 1, Section 3 which provides that: where parents of an illegitimate person marry one another and the father of the illegitimate person is not at the time of marriage domiciled in England and Wales but is domiciled in a country by the law of which the illegitimate person became legitimated by virtue of such subsequent marriage, that person, if living, shall in England and Wales be recognized as having been so legitimated from the date of the marriage.

Lisandro Patrick v. Noelia Rivera-López
Civil No. 12-1501 (CVR)
Opinion and Order
Page No. 14

---

the paternity of the man who has thereafter married the mother.[16] Still more so, Puerto Rico's legislative system allows no room for liberal interpretation regarding facts of life recorded in Vital Statistics Registry of Puerto Rico and exceptions in its Sections 1041 *et seq*. shall be construed restrictively. *See* León Rosario v. Torres, 109 D.P.R. 804 (1980).

Thus, by the mere marriage of two individuals, those children who have been previously born and have not been registered by both contracting parties as theirs, will not be automatically considered as begotten by the married couple previous to such a marriage. It is required that the recognition of a natural child be made in a public document or in an affidavit, and upon the presentation of said document or affidavit, then the keeper of the Register of Vital Statistics would proceed to register the same, and, for that purpose, the corresponding certificate of registration shall be filled out. *See* Ramos v. Rosario, 67 P.R.R. 641 (1947).

In the present case, petitioner Patrick never presented to the Puerto Rico Vital Statistics Office the affidavit referred to in his petition where he claims having recognized the minor L.N.R. who was to be born from respondent Rivera López. (Docket No. 1, Exhibit B). For these reasons, at this juncture, this federal court is not in a position to recognize whether such document would be considered as establishing, without more, the paternal

---

[16] As above explained, petitioner has not registered himself as the father of L.N.R. neither in Puerto Rico nor England nor has he established any custody/parental responsibility over the child. As such, there is no need to delve into the constitutional restrains that the Puerto Rico jurisprudence establishes regarding legitimate and illegitimate children, that is, children born from a marriage or out of wedlock, nor as to other interpretations that declare all children and their parents under equal footing regardless of their birth wherein all children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children. Article 1, Act No. 17 of August 20, 1952, known as the Act to Establish the Equality of Rights of Children, 31 L.P.R.A. § 441); Art. II, Sec. 1 of the Constitution of the Commonwealth of Puerto Rico (Bill of Rights); Ocasio v. Díaz, 88 P.R.R. 658 (1963).

rights of petitioner Patrick under Puerto Rico laws or if it would have been accepted as sufficient by the keeper of the Register to recognize L.N.R. as the child of petitioner and respondent.[17] Petitioner did not go either to the Demographic Registry in Puerto Rico to recognize L.N.R. as his daughter following the readily available established procedure for a father to recognize a child as his son or daughter.

In sum, under the above contentions, and providing petitioner Patrick full benefits under the factual and legal scenario presented in the petition, his parental rights have not been previously established for this Court to exercise its limited jurisdiction under the Hague Convention.

## CONCLUSION

In view of the foregoing, this Court GRANTS respondent's Motion to Dismiss and DISMISSES WITH PREJUDICE the petition for return of the child under the Hague Convention (Docket No. 1), without reference to whatever course of action may be proper regarding paternal relations and custody rulings to be established through appropriate legal proceedings.

---

[17] Petitioner has not discussed in its reply how was England law to extrapolate through its Legitimate Law the birth certificate of the child who appears registered in Puerto Rico solely under the mother's maiden name, with the claimed affidavit of recognition by petitioner prior to the child's birth, without these events been officially registered in Puerto Rico nor in England prior to the Hague Convention petition which requires that custody rights must have been established and exercised prior to the request for return of a child in breach of such parental rights.

<u>Lisandro Patrick v. Noelia Rivera-López</u>
Civil No. 12-1501 (CVR)
Opinion and Order
Page No. 16

---

Judgment to be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 8th day of November of 2012.

          S/ CAMILLE L. VELEZ-RIVE
          CAMILLE L. VELEZ-RIVE
          UNITED STATES MAGISTRATE JUDGE